# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| DIANA MEDEMA, et al., | No.: 1:25-cv-7768 |
| Plaintiffs, | |
| v. | |
| NUNA BABY ESSENTIALS, INC., | |
| Defendant. | |

## PLAINTIFFS' OPPOSED MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL HISTORY ............................................................................... 3

III.  ARGUMENT ...................................................................................................... 4

    A.  Nuna's Relevance Redactions Are Improper as a Matter of Law and Prejudice Plaintiffs' Ability to Evaluate Evidence and Examine Witnesses ............................................................................... 4

        1.  Nuna's relevance redactions impede Plaintiffs' ability to assess and understand evidence. ........................................... 6

        2.  Nuna's relevance redactions impede Plaintiffs' ability to conduct depositions and cross-examine witnesses at trial. ........... 10

        3.  The Protective Orders protect Nuna from any harm from producing documents without relevance redactions. ................... 11

    B.  Nuna Has Failed to Produce Core Class Discovery. ............................... 12

        1.  Nuna failed to produce registration data. ...................................... 13

        2.  Nuna failed to produce sales data. .................................................. 14

IV.  CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Cox v. Sherman Cap. LLC*,
No. 1:12-cv-01654-TWP-MJD, 2016 WL 397607 (S.D. Ind. Feb. 2, 2016),
*modified on other grounds on recons.*, No. 1:12-cv-01654-TWP-MJD,
2016 WL 7975817 (S.D. Ind. Feb. 5, 2016) ........................................................9, 10, 11

*Cox v. Sherman Cap. LLC*,
No. 1:12-cv-01654-TWP-MJD, 2016 WL 7975817 (S.D. Ind. Feb. 5, 2016).......5, 12

*Curtis v. 7-Eleven, Inc.*,
No. 1:21-CV-06079, 2023 WL 12239649 (N.D. Ill. Nov. 20, 2023) ...................12, 14

*F.F.T., LLC v. Sexton*,
2020 WL 3258623 (S.D. Ind. June 15, 2020)................................................................. 5

*Grayson v. City of Aurora*,
No. 13 C 1705, 2013 WL 6697769 (N.D. Ill. Dec. 19, 2013) ...................................... 5

*Hansen v. Country Mut. Ins. Co.*,
No. 18 CV 244, 2020 WL 5763588 (N.D. Ill. Sept. 28, 2020)........................5, 6, 8, 11

*In re Aqua Dots Prods. Liab. Litig.*,
270 F.R.D. 322 (N.D. Ill. 2010), *aff'd*, 654 F.3d 748 (7th Cir. 2011)......................... 13

*LKQ Corp. v. Kia Motors Am., Inc.*,
No. 21 C 3166, 2023 WL 3455315 (N.D. Ill. May 15, 2023)................................... 6, 9

*Matter of Krynicki*,
983 F.2d 74 (7th Cir. 1992) ........................................................................................ 12

*Peters v. USAA Gen. Indem. Co.*,
No. 4:24-CV-04147-RAL, 2025 WL 2021762 (D.S.D. July 18, 2025)....................... 15

*U.S. Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*,
No. 13-CV-04307, 2015 WL 2148394, (N.D. Ill. May 5, 2015) ................................. 9

*U.S., ex rel. Liotine v. CDW Govt., Inc.*,
No. 3:05-cv-33-DRH-DGW, 2011 WL 1576555 (S.D. Ill. Apr. 26, 2011)............... 14

*Vasquez v. Indiana Univ. Health, Inc.*,
No. 1:21-CV-01693-JMS-MG, 2023 WL 3450809 (S.D. Ind. May 15, 2023) ........... 9

**<u>Rules</u>**

Fed. R. Civ. P. 26(b)(1) ...................................................................................................4-5

## I. INTRODUCTION

Plaintiffs Diana Medema, Brenda Granados, and Blaire Gilomen ("Plaintiffs") allege that Defendant Nuna Baby Essentials, Inc. ("Nuna") sold its RAVA Car Seat ("RAVA") for up to $550 to over 600,000 customers. Complaint, ECF No. 1, ¶¶ 65-66. Plaintiffs further allege Nuna designed the RAVA such that debris collects in the front harness adjuster, causing it to loosen and "not properly restrain the child, increasing the risk of injury in a crash" (the "Defect"). *Id.*, ¶ 11. The accumulation may be food, dirt, toys, or other debris children leave behind. By the time Plaintiffs made their first RAVA purchase in 2021, Nuna had received 118 complaints regarding the Defect. *In re Nuna Baby Essentials RAVA Litig.*, No. 4:25-cv-01284-AMO (N.D. Cal.), ECF No. 99, ¶¶ 70, 73, 77, 81, 83.[1] However, it was not until December 20, 2024, that Nuna announced its *insufficient* recall (the "Recall"). ECF No. 1, ¶ 9.

The Parties engaged in extensive discovery in accordance with applicable Court Orders (*see* ECF Nos. 69, 70), including the resolution of discovery disputes before this Court (ECF Nos. 47, 52). As depositions and class certification deadlines are rapidly approaching in this and Related Cases, Plaintiffs seek the Court's intervention to address two significant deficiencies:

- <u>Improper Relevance Redactions.</u> Nuna improperly redacted, on

---

[1] The Parties have informally coordinated the RAVA Defect cases: *In re Nuna*, No. 3:25-cv-01284-AMO (N.D.Cal. Feb. 6, 2025); *Chan v. Nuna Baby Essentials, Inc.*, No. 1:25-cv-03985-LDH-PK (E.D.N.Y. July 17, 2025); *Baig v. Nuna Baby Essentials, Inc.*, No. 5:25-cv-03327-JLS (E.D. Pa. Jun. 30, 2025) (collectively, the "Related Cases").

purported relevance grounds, all or portions of approximately 634 responsive documents, including documents concerning RAVA sales, customer complaints, customer service procedures, and internal discussions of the Defect. Relevance redactions of otherwise responsive documents are improper and impair Plaintiffs' ability to evaluate the evidence and conduct depositions. Compounding this issue, Nuna has inconsistently applied its redactions, with duplicate copies of the same document containing *different redactions*—including redactions of plainly relevant information—calling into question the reliability and credibility of Nuna's document review and production.

- <u>Failure to Produce Core Class Discovery.</u> Nuna failed to produce requested RAVA registration and sales data, despite its obvious relevance and proportionality.[2] The data should be available for use in depositions and is central to establishing numerosity and commonality under Rule 23 and to calculating the price-premium paid by more than 600,000 consumers who purchased Nuna's defective RAVA.

Nuna represented that its data production was substantially completed on April 24, 2026, written meet-and-confer communications began on May 19, 2026, and on

---

[2] Nuna has indicated it will produce sales data, but only for agreed-upon states by July 24, 2026. Certification of William A. Ladnier in Supp. of Motion to Compel ("Ladnier Cert."), ¶ 20.

2

June 5, 2026, the Parties met and conferred by video conference, as required by Local Rule 37.2. *See* Ladnier Cert., ¶¶ 9-11. From May 19 to July 15, 2026, the Parties continued to exchange written communications as to the discovery disputes. *Id.*, ¶¶ 7-19. The Parties' good faith attempts to resolve their differences were unsuccessful.

As a result of Nuna's interminable refusals and delays, and pursuant to Federal Rule of Civil Procedure 37(a) and the Court's Standing Order, and because Plaintiffs have scheduled upcoming depositions in late July and early August, Plaintiffs seek entry of an order compelling Nuna to produce the documents identified herein by July 24, 2026, or as soon thereafter as the Court orders.[3] *See* Ladnier Cert. ¶ 24. Nuna opposes this motion.

## II. PROCEDURAL HISTORY

- July 9, 2025: Plaintiffs filed their complaint. ECF No. 1.
- November 7, 2025: Plaintiffs served Requests for Production. Ladnier Cert., Ex. 2.
- February 2, 2026: Nuna filed its Motion to Dismiss. ECF No. 48.[4]
- May 19, 2026: Plaintiffs raised discovery disputes, many now resolved. *Id.* ¶ 7.
- May 27, 2026: Nuna replied. *Id.* ¶ 8.
- June 5, 2026: The Parties participated in a Zoom video meet-and-confer in compliance with Local Rule 37.2 and this Court's Standing Order. *See Id.* ¶ 9.

---

[3] If the Court determines a production date later than July 24, 2026 is more appropriate, Plaintiffs reserve all rights to hold any deposition open that will require inquiry into the documents at issue.

[4] Motions to dismiss have been filed in all Related Cases and two courts have denied dismissal: *In re Nuna*, No. 3:25-cv-01284-AMO, ECF No. 97 (sustaining consumer fraud claims) and *Baig*, No. 5:25-cv-03327-JLS, ECF No. 38 (same).

- June 15, 2026: Plaintiffs summarized June 5, 2026, meet and confer. *Id.* ¶ 12.

- June 25, 2026: Plaintiffs deposed Nuna's Consumer Service Supervisor, Averi Edmister, by Zoom. *Id.* ¶ 13.

- July 1, 2026: Plaintiffs raised the remaining discovery disputes, including those raised in the instant Motion. *Id.* ¶ 14.

- July 8, 2026: Nuna replied. *Id.* ¶ 16.

- July 15, 2026: Plaintiffs sought and Nuna provided clarification as to the scope and timing of Nuna's production of sales data. *Id.* ¶¶ 18-19.

- July 22, 2026: Entry of the Stipulated Order Governing Production of Electronically Stored Information ("ESI Order") and Stipulated Protective Order. *See* ECF Nos. 69, 70;[5]

- July 27, 28, 30, and 31, 2026, and August 4, 5, and 6, 2026: Depositions of Nuna personnel noticed by Plaintiffs.

Nuna produced approximately 13,271 documents, including approximately 634 documents that are redacted as "Non-Responsive." Ladnier Cert., Ex. 12. Additionally, Nuna failed to produce all responsive registration and sales data, including *any* data pertaining to RAVAs sold directly by Nuna. Following numerous correspondence and meet-and-confers, the Parties remain at an impasse.

## III. ARGUMENT

### A. Nuna's Relevance Redactions Are Improper as a Matter of Law and Prejudice Plaintiffs' Ability to Evaluate Evidence and Examine Witnesses.

Federal Rule of Civil Procedure 26 contemplates expansive discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P.

---

[5] Prior to this date, the Parties, by agreement, exchanged discovery with the understanding that the ESI Order and Protective Order entered in the Related Cases would govern. *See, e.g., In re Nuna*, No. 4:25-cv-01284-AMO, ECF Nos. 54, 61; *see also* Ladnier Cert. ¶¶ 4-5.

26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Most courts agree that a producing party may not unilaterally redact non-responsive information from responsive documents. *See, e.g., Hansen v. Country Mut. Ins. Co.*, No. 18 CV 244, 2020 WL 5763588, at *4 (N.D. Ill. Sept. 28, 2020) ("[A] producing party [is precluded] from making unilateral redactions to otherwise responsive documents on the grounds that the documents contain non-responsive or irrelevant information where there is a confidentiality order in place."); *Grayson v. City of Aurora*, No. 13 C 1705, 2013 WL 6697769, at *6 (N.D. Ill. Dec. 19, 2013) ( "information [other than personal information] . . . is discoverable and must be produced to [plaintiff] without redaction"); *F.F.T., LLC v. Sexton*, No. 1:19-cv-03027, 2020 WL 3258623, at *4 (S.D. Ind. June 15, 2020) ("Relevance generally is not a sufficient reason to redact otherwise responsive documents."); *Cox v. Sherman Cap. LLC* ("*Cox II*"), No. 1:12-cv-01654-TWP-MJD, 2016 WL 7975817, at *2 (S.D. Ind. Feb. 5, 2016) (refusing to allow the defendants to "unilaterally redact portions of [] otherwise relevant and responsive documents").

The *Hansen* court examined applicable case law and required unredacted production because: (1) a producing party is not harmed by producing relevant documents in unredacted form where a protective order has been entered; (2) *in camera* review of proposed redactions unnecessarily burdens courts; (3) redaction improperly alters evidence, especially since the producing party unilaterally decides which portions

of a document are responsive; and (4) unilateral redactions undermine trust between litigants. 2020 WL 5763588, at *4. While some courts have permitted relevance redactions, they have done so in the business context where one litigant could use unredacted information to its competitive advantage. *See LKQ Corp. v. Kia Motors Am., Inc.*, No. 21 C 3166, 2023 WL 3455315, at *6 (N.D. Ill. May 15, 2023). That concern does not exist here.

### 1. Nuna's relevance redactions impede Plaintiffs' ability to assess and understand evidence.

Nuna's unilateral redactions deny Plaintiffs access to vital context and impede Plaintiffs' understanding of the documents as a whole. For example, Nuna produced a spreadsheet (Nuna_Def_000033010), which contains one *wholly* redacted sheet and one sheet so heavily redacted that Plaintiffs are unable to decipher it. Ladnier Cert., Ex. 15. Such redactions impermissibly "affect an understanding of the relevant information." *See LKQ Corp.*, 2023 WL 3455315, at *6.



6

███████████████████████████████ Ladnier Cert., Ex. 16. Even if the redacted information is somehow not relevant—a point Plaintiffs are unable to confirm—the redactions deprive Plaintiffs of necessary context to understand the document. █████████████████████████████████



Alarmingly, Plaintiffs discovered that Nuna redacted relevant, responsive, and proportional information for claimed irrelevance. █████████████████████████

████████████████████████████████████████████████████ In

several instances, information redacted as purportedly "Non-Responsive" in one version appears unredacted in the other, indicating that Nuna applied differing standards during document review. *See, e.g.,* Ladnier Cert., Ex. 17, Excerpts of Rows 104, 106, 108. Worse, Nuna redacted indisputably relevant information from these documents. ▮



*Id.*

These inconsistencies and improper redactions undermine Plaintiffs' ability to rely on the consistency and integrity of Nuna's production and the asserted redactions as a whole—another reason courts disfavor unilateral relevance redactions. *See Hansen,* 2020 WL 5763588, at *4. The narrow exceptions to the general prohibition on relevance redactions do not apply to these redactions which render produced, responsive documents meaningless.

The few courts to allow relevance redactions make clear that such redactions must "not affect an understanding of the relevant information." *LKQ Corp.*, 2023 WL 3455315, at *6; *Vasquez v. Indiana Univ. Health, Inc.*, No. 1:21-CV-01693-JMS-MG, 2023 WL 3450809, at *2 (S.D. Ind. May 15, 2023) ("Redaction may be permissible when the redacted portion is not necessary to provide context to the unredacted portion of the document"); *see also Cox v. Sherman Cap. LLC* ("*Cox I*"), No. 1:12-cv-01654-TWP-MJD, 2016 WL 397607, at *3 (S.D. Ind. Feb. 2, 2016), *modified on other grounds on recons.*, No. 1:12-cv-01654-TWP-MJD, 2016 WL 7975817 (S.D. Ind. Feb. 5, 2016) (ordering unredacted production of materials that were "redacted to such a degree as to make it difficult to understand the context of the agreement and impossible to identify the parties involved"). Moreover, parties should not be permitted to unilaterally decide what portions of a document are relevant (or irrelevant), especially since "even irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information." *U.S. Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC* ("*Dolgencorp*"), No. 13-CV-04307, 2015 WL 2148394, at *2 (N.D. Ill. May 5, 2015) (granting motion to compel) (citation omitted).

Nuna unilaterally determined the purported relevance of information contained in produced documents—sometimes in inconsistent (and inaccurate) ways. This not only calls into question Nuna's document productions, but undermines Plaintiffs' ability to analyze the context of the documents, which undermines Plaintiffs' ability to conduct discovery and prove their claims. *See* Ladnier Cert., Exs. 15-18.

### 2. Nuna's relevance redactions impede Plaintiffs' ability to conduct depositions and cross-examine witnesses at trial.

Courts also disfavor relevance redactions which interfere with a party's ability to take depositions. *See, e.g., Cox I*, 2016 WL 397607 at *3 (ordering unredacted production of documents for use in Rule 30(b)(6) deposition). That is precisely what occurred on June 25, 2026, in the Averi Edmister deposition.



Plaintiffs are unable to discern the meaning of

this document due to Nuna's heavy-handed redactions, and, under questioning, Ms. Edmister conceded that *she herself*, despite participating in the original exchange, was unable to discern the meaning of these messages due to the redactions. *See* Ladnier Cert., Ex. 8, at 238:2-240:3. Plaintiffs were, thus, unable to fully explore the ramifications of this exchange during Ms. Edmister's deposition, or even refresh her memory regarding the communications. *See id.* at 239:8-240:3, 240:22-241:7. Redactions "to such a degree as to make it difficult to understand the context of the [document]" are improper, especially where they interfere with a party's ability to depose witnesses. *Cox I*, 2016 WL 397607 at *3. Plaintiffs have multiple examples of such improper redactions that prejudice their ability to assess the evidence—and of Nuna's own witnesses' ability to do so.

### 3. The Protective Orders protect Nuna from any harm from producing documents without relevance redactions.

Plaintiffs' use of any produced material is governed by the Protective Order entered by the Court. ECF No. 70; *see also In Re Nuna*, No. 3:25-cv-01284-AMO, ECF No. 54; *Chan*, No. 1:25-cv-03985-LDH-PK, ECF No. 28; *Baig*, No. 5:25-cv-03327-JLS, ECF No. 25. Given that discovery is governed by Protective Orders negotiated by the Parties, Nuna has not articulated any harm that could result from producing relevant materials in unredacted form. *See, e.g.*, *Hansen*, 2020 WL 5763588, at *4 (finding producing party "will suffer no harm if the documents are produced without redactions given the existence of the amended agreed confidentiality order"); *Dolgencorp*, 2015 WL

11

2148394 at \*3 (granting motion to compel unredacted production "especially [] in light of the confidentiality order in place in this case"); *Cox II*, 2016 WL 7975817 at \*3 ("There is a protective order in place in this litigation. . . . There is no evidence before this Court suggesting that Plaintiffs will violate the protective order and expose themselves to sanctions for contempt."). Protective orders "promote[] disclosure," with "parties having arguable grounds to resist discovery [being] more likely to turn over their information if they know that the audience is limited." *Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992). Nuna therefore not only enjoys the benefits of a protective order shielding its productions from public view, but also hides material *from those covered by* the Protective Order. The Court should not abide such obstruction of meaningful discovery.

Plaintiffs therefore request that the Court require Nuna to produce unredacted versions of the documents listed in Exhibit 12 of the Ladnier Certification by July 24, 2026.

### B. Nuna Has Failed to Produce Core Class Discovery.

Courts routinely require production of important class data, including the categories Plaintiffs seek here: registration and sales data. In *Curtis v. 7-Eleven, Inc.*, the court granted a motion to compel nationwide sales data of at-issue products because the information was necessary for class certification, bearing on questions of numerosity and commonality, especially since plaintiff was willing to "accept sales data that omits identifying information." No. 1:21-CV-06079, 2023 WL 12239649, at \*2-3

12

(N.D. Ill. Nov. 20, 2023); *see also, e.g., In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 322, 324-26 (N.D. Ill. 2010), *aff'd*, 654 F.3d 748 (7th Cir. 2011) (granting motion to compel financial information to prove punitive damages prior to class certification).

Plaintiffs' discovery requests seek: (1) registration data identifying information for purchasers of the RAVA and how Nuna tracks and records sale information (RFP Nos. 30-31), and (2) sales and pricing data, with sales data categorized by time periods, locations, and other quantitative values (RFP Nos. 32-34). *See* Ladnier Cert., Ex. 2. The requested data should be available for use in depositions and is pivotal for establishing required elements of class certification, including numerosity and commonality. Further, such basic registration and sales data is necessary for Plaintiffs' experts to analyze and opine as to the price-premium paid by RAVA purchasers based on Nuna's misrepresentation that the RAVA was safe.

### 1. Nuna failed to produce registration data.

Nuna failed to produce all registration data, arguing that production is premature, despite Plaintiffs' repeated suggestions of several compromises to facilitate prompt production of these materials consistent with the Protective Order. Ladnier Cert., Exs. 7; 9. Specifically, Plaintiffs suggested targeted redactions and/or use of unique randomized identifiers to protect customer names. *Id.*, Ex. 7, at 3.

Registration data is not premature. The Parties agreed upon dates in July and August for several depositions of Nuna employees, including those involved with tracking registration data. Plaintiffs require the registration data to conduct these

13

depositions. Moreover, Nuna has expressed to Plaintiffs that it may not maintain nationwide sales information broken down by states. *See id.* This state-by-state gap makes Nuna's state-by-state registration data essential for Plaintiffs to evaluate and address questions of numerosity, commonality, and to assess the price-premium paid by RAVA purchasers.

Moreover, Plaintiffs have confirmed that Nuna keeps registration data in readily producible form, which weighs in favor of production. *See Curtis*, 2023 WL 12239649 at *3; *U.S., ex rel. Liotine v. CDW Govt., Inc.*, No. 3:05-cv-33-DRH-DGW, 2011 WL 1576555, at *2 (S.D. Ill. Apr. 26, 2011) (compelling the production of all sales data, which was "readily available in a searchable database maintained by [defendant]"). Specifically, Nuna produced registration data for RAVAs purchased from January 26, 2018, to June 4, 2018, and from December 1, 2024, to January 8, 2025, confirming that registration data *is* maintained in a readily producible format.

### 2. Nuna failed to produce sales data.

After months of delay—and only after Plaintiffs provided notice of their motion to compel seeking nationwide sales data—Nuna agreed to produce only sales data for the five states at issue in this and the Related Cases: Illinois, California, New York, Pennsylvania, and Virginia. Ladnier Cert., Ex. 11, at 2; Ex. 14.[6] Other than that recent representation and the limited sales data Nuna previously produced to NHTSA,

---

[6] A Related Case alleges a nationwide class. *Baig*, No. 5:25-cv-03327-JLS, Compl., ECF No. 1, ¶ 94.

however, Nuna has refused to confirm whether additional nationwide sales data exists or whether the NHTSA production is complete.[7]

As of the filing of this Motion, however, Nuna has *not* produced the promised five-state sales data. A promise is not a production. *See Peters v. USAA Gen. Indem. Co.*, No. 4:24-CV-04147-RAL, 2025 WL 2021762, at *5 (D.S.D. July 18, 2025). Plaintiffs served requests for production seeking sales data on November 7, 2025, and Nuna agreed to complete its production by April 24, 2026. Nuna has produced neither the promised state-specific sales data nor any direct-to-consumer RAVA sales. Given Nuna's repeated failures to honor its discovery commitments, Plaintiffs can no longer rely on Nuna's assurances of future production without Court intervention.

Nuna's agreement to produce data for five states does not resolve Plaintiffs' request for nationwide sales data. Nationwide sales data remains relevant and proportional to Plaintiffs' claims, and Nuna has never stated a substantive basis for withholding it. Accordingly, Plaintiffs respectfully request that the Court order Nuna to produce its nationwide sales data as well as the promised state-specific data by July 24, 2026, or as soon thereafter as the Court orders. *See* Ladnier Cert., ¶ 24.

## IV.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to compel in its entirety.

---

[7] If the NHTSA production is the complete production, it raises questions as to the bases of the new promise for sales data from the five states identified.

DATED: July 17, 2026

Respectfully submitted,

/s/ *William A. Ladnier*
Adam A. Edwards (*pro hac vice*)
William A. Ladnier (*pro hac vice*)
Virginia Ann Whitener (Ill. Bar No. 6337452)
**MILBERG PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
*aedwards@milberg.com*
*wladnier@milberg.com*
*gwhitener@milberg.com*

Leland H. Belew (Ill. Bar No. 6331809)
**MILBERG PLLC**
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (865) 247-0080
Fax: (865) 522-0049
*lbelew@milberg.com*

Kevin Laukaitis (pro hac vice)
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Tel.: (215) 789-4462
*klaukaitis@laukaitislaw.com*

*Counsel for Plaintiffs and the Proposed Class*

16

## <u>WORD COUNT CERTIFICATION</u>

Plaintiffs' Motion to Compel complies with the Court's Individual Rule regarding word count as it contains <u>3,489 words</u>, not including the case caption, title, tables of contents or authority, or signature blocks.

/s/ *William A. Ladnier*
William A. Ladnier

*Attorney for Plaintiffs*
*and the Proposed Class*
