IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Diana Medema, Brenda Granados and Blaire Gilomen, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Nuna Baby Essentials, Inc.,

Defendant.

No. 25-cv-7768
Judge Franklin U. Valderrama

## ORDER

Nuna Baby Essentials, Inc. (Nuna) designs and manufactures children's car seats, including the Nuna "Rava" product line of convertible car seats. R. 1, Compl.[1] Nuna discovered a defect in certain Rava model car seats and initiated a voluntary recall. Plaintiffs Diana Medema, Brenda Granados, and Blaire Gilomen (Plaintiffs), all purchasers of car seats subject to the recall, sued Nuna asserting claims for, among other things, serious design defects, inadequate response and remediation, and failure to adequately disseminate information relating to the defect, on behalf of themselves and a putative class of purchasers.[2] *See* Compl. Nuna moves to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

[2]The proposed class is defined as: "During the fullest period allowed by law, all persons who purchased the Products in the State of Illinois for personal use and not resale." Compl. ¶ 134.

12(b)(6). R. 20, Mot. Dismiss; R. 21 Memo. Dismiss. For the reasons that follow, the Court grants in part and denies in part the motion.

## Background[3]

### I. Factual Allegations

Nuna designs, manufactures, and sells car seats, including the Nuna "Rava" product line of convertible car seats (the Car Seat or Car Seats). Compl. ¶ 1. The Car Seats are marketed as "convertible" car seats, meaning they are designed to hold, secure, and protect children of all ages and sizes. *Id.* ¶ 2. As the child grows, the Car Seat can be converted to ensure that it can still seat and safely secure the child. *Id.* The Car Seat provides protection through a five-point harness system that, when tightened, is designed to remain securely in place until the front release button is pressed and the harness straps are loosened simultaneously. *Id.* ¶ 3. The harness system is intended to remain secure throughout the ride, and especially during a crash. *Id.*





[3]The Court takes the factual background from the well-pled allegations in the Complaint and assumes the allegations to be true for the purposes of the instant motion. *See, e.g.*, *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017).

According to Plaintiffs, by design, the Car Seats' front harness adjuster is uncovered, and prone to being covered with debris. *Id.* ¶ 4. Should debris come into contact with the front harness adjuster button, allege Plaintiffs, it can impede the mechanism from properly clamping onto the harness strap. *Id.* This "defect" causes the harness not to properly and securely tighten (or remain tight) or to loosen altogether which in turn cannot properly restrain the occupant and thereby increases the risk of injury in the event of a crash. *Id.*




On its website, Nuna advertises the Car Seats as a "[f]an-favorite for security, ease-of-use, longevity and sleek design." Compl. ¶ 3. Nuna, according to Plaintiffs, makes these representations because it knows that consumers are willing to pay more for high-quality and safe baby products. *Id.* ¶ 6. On December 20, 2024, Nuna voluntarily recalled certain Car Seats manufactured between July 16, 2016 and October 25, 2023 (the Recall). *Id.* ¶¶ 9, 46. The Recall concerned a "loose harness

[that] may not properly restrain the occupant, increasing the risk of injury in a crash." *Id.* ¶ 47. As part of the Recall, Nuna began to send notices to consumers on January 15, 2025, pursuant to National Highway Transportation Safety Administration (NHTSA) requirements. *Id.* ¶ 10. Not all consumers, however, have received this notice. *Id.* The Recall, from Plaintiffs' perspective, is inadequate. *Id.* ¶¶ 13, 59. Instead of recalling the Car Seats, Nuna offered to provide consumers with instructions on how to slightly modify their existing Car Seats. *Id.* The Recall also required consumers to *request* remediation, which the consumer had to install. *Id.* ¶ 14 (emphasis original). Nuna, in its January 15, 2025 NHTSA recall notice, acknowledged that it was still developing a free remedy kit that, as of the time of briefing, was not yet available. *Id.* ¶ 20.[4]

Plaintiffs Medema, Granados, and Gilomen all purchased Car Seats which are subject to the Recall. Compl. ¶¶ 69, 70, 80, 81, 91, 92. None of the Plaintiffs were aware of the defect in the Car Seats prior to the Recall notice. *Id.* ¶¶ 73, 84, 95. None of the Plaintiffs would have purchased the Car Seats had they known about the defect, or they would have paid substantially less for it. *Id.* ¶¶ 77, 88, 99. Upon learning of the Recall, each Plaintiff stopped using the Car Seats. *Id.* ¶¶ 75, 86, 97.

Plaintiffs sued Nuna individually and on behalf of a putative class asserting claims for breach of express warranty (Count I); breach of implied warranties (Count II); violation of the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301, *et seq.* (Count III); fraud (Count IV); negligent misrepresentation (Count V); violation of the

[4]The Court notes that as of 9/30/2026, the remedy kit is now available on Nuna's website. *See* https://nunababy.com/recalls-rava1.

Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA), 815 ILCS 505/1, *et seq*. (Count VI), and unjust enrichment (Count VII). *See* Compl.

Before the Court is Nuna's fully briefed motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6). *See* Mot. Dismiss.

**Legal Standards**

Federal Rule of Civil Procedure 12(b)(1) permits dismissal of a complaint over which the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). Challenges to subject-matter jurisdiction can be either "facial" or "factual." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citing *Apex Dig., Inc.*, 572 F.3d at 444). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the

evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3d at 444 (internal citations omitted). A factual challenge, on the other hand, contends that "there is in fact no subject matter jurisdiction even if the pleadings are formally sufficient." *Id.* (emphasis in original). Here, Nuna launches a facial challenge.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), on the other hand, challenges the sufficiency of the complaint. *Hallinan*, 570 F.3d at 820. Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**Analysis**

Nuna moves to dismiss Plaintiffs' claims on multiple grounds. First, Nuna argues that Plaintiffs do not have federal subject matter jurisdiction, lack standing to seek injunctive relief, do not allege an injury in fact, and that the prudential

mootness doctrine applies. Additionally, Nuna posits that even if Plaintiffs have standing, dismissal is warranted as Plaintiffs have failed to state a claim.

The Court starts with Nuna's arguments relating to the lack of subject matter jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (holding that a court "may not rule on the merits of a case without first determining that it has jurisdiction over the [cause] (subject-matter jurisdiction) and the parties (personal jurisdiction).").

## I. 12(b)(1) Motion

Nuna advances multiple arguments in support of dismissal for lack of jurisdiction. First, buried in its 12(b)(6) section of the brief, Nuna argues Plaintiffs do not have federal subject matter jurisdiction. Memo. Dismiss at 18. Next, in the 12(b)(1) section of the brief, Nuna contends that Plaintiffs lack Article III standing for either injunctive or monetary relief, fail to allege an injury in fact, and the prudential mootness doctrine precludes Plaintiffs' claims. *Id.* at 4–13. The Court addresses each argument in turn.

### *A. Federal Subject Matter Jurisdiction*

Plaintiffs bring claims under the MMWA alleging that Nuna breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Nuna made about the Car Seats and by failing to truthfully advertise and warrant that the Car Seats were safe, free of defect, and fit for their intended purpose. Compl. ¶ 191. Nuna argues Plaintiffs' MMWA claims lack federal subject matter jurisdiction.

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ." 15 U.S.C. § 2310(d)(1). The MMWA "is a consumer protection statute that requires transparency in warranties on consumer products and establishes minimum criteria for different types of warranties and warranty-like products." *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 728 (7th Cir. 2021). The MMWA "requires that if a warrantied *consumer* good cannot be repaired, the written warranty must give *consumer* a choice of remedy: either replacement or a refund of the purchase price, less reasonable depreciation based on actual use." *Id.* at 728–29 (emphases in original). The MMWA provides a private right of action by purchasers of consumer products against manufacturers or retailers who fail to comply with the terms of a written or implied warranty. 15 U.S.C. § 2310(d)(1). Under the MMWA, a consumer who is damaged by a warrantor's failure to comply with the obligations under a written or implied warranty may sue for damages in two alternative venues: (1) "any court of competent jurisdiction in any State or the District of Columbia"; and (2) "an appropriate district court of the United States." *Id.* § 2310(d)(1)(A)–(B). A plaintiff, however, may not file suit under the MMWA in federal district court:

> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or

> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

*Id.* § 2310(d).

Subsection (C), the number of named plaintiffs, is what is at issue here. *See* Memo. Dismiss at 18. Nuna argues Plaintiffs have less than one hundred named plaintiffs and thus, this Court does not have federal question jurisdiction over breach of warranty claims arising under the MMWA. *Id.* Plaintiffs disagree, and maintain that although they have less than one hundred named plaintiffs, the Class Action Fairness Act (CAFA) provides an independent basis for subject matter jurisdiction over Plaintiffs' MMWA claims. R. 32, Resp. at 19 (citing 28 U.S.C. § 1332).

CAFA grants district courts with original jurisdiction over any class action in which the amount in controversy exceeds the sum of $5,000,000 in the aggregate; there is minimal diversity among the parties, i.e., any class member and any defendant are citizens of different states; and there are at least 100 members in the class. 28 U.S.C. § 1332(d)(2), (5). "CAFA was enacted to grant broad federal jurisdiction over class actions and establishes narrow exceptions to such jurisdiction." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012) (citation modified); *see also* S. Rep. No. 109–14, at 43, 45 (2005) (explaining that CAFA's provisions granting federal court jurisdiction should be read broadly).

Here, Plaintiffs meet the requirements for CAFA jurisdiction. Plaintiffs are all citizens of Illinois and Nuna is a Pennsylvania corporation whose principal place of business is in Pennsylvania. Compl. ¶¶ 25–28. Additionally, the amount in controversy exceeds $5 million in the aggregate and Plaintiffs allege that there are

more than 100 potential class members. *Id.* ¶ 30. Nuna does not dispute that Plaintiffs satisfy the requirements of CAFA but dispute that CAFA jurisdiction extends to the MMWA claims. *See* R. 39, Reply at 10–12.

This Court addressed this exact issue in detail in a different case. *See Velez v. RM Acquisition, LLC*, 670 F. Supp. 3d 620 (N.D. Ill. 2023). There, the Court determined that CAFA can be used to confer federal jurisdiction over an MMWA claim when the MMWA's jurisdictional requirements were not met. *Id.* Since *Velez*, additional courts in this Circuit have made similar determinations. *See In re Generac Solar Power Sys. Mktg., Sales Pracs., and Products Liab. Litig.*, 735 F. Supp. 3d 1036 (E.D. Wis. 2024) (concluding "that CAFA provides an independent basis for subject-matter jurisdiction over plaintiffs' MMWA claims"); *O'Connor v. Ford Motor Co.*, 2025 WL 792725, at *4 (N.D. Ill. Mar. 12, 2025) ("In consideration of the Seventh Circuit's guidance regarding the liberal construction of CAFA, this Court is persuaded by the reasoning of the courts which have held that CAFA affords jurisdiction even where MMWA's jurisdictional requirements are not satisfied."); *Russo v. BRP US Inc.*, 737 F. Supp. 3d 649, 655 (E.D. Wis. 2024) ("both CAFA and § 1367 can be used to confer federal jurisdiction over an MMWA claim when the requirements of the MMWA's own jurisdiction-conferring provision are not met").

Accordingly, the Court finds that it has subject matter jurisdiction over Plaintiffs' MMWA claims under CAFA.

*B. Injunctive Relief*

"Article III of the Constitution confines the federal courts to adjudicating actual cases or controversies." *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010); U.S. Const. art. III, § 2. Article III standing is a question of subject matter jurisdiction, consisting of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be concrete, that is, "real, and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo*, 578 U.S. at 340). The complaint "need only plausibly suggest each element of standing." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citation modified). "[A] plaintiff must have standing for each form of relief sought." *Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 813 (7th Cir. 2018).

Plaintiffs bring claims seeking injunctive relief; specifically, an order "enjoining Nuna from continuing the unlawful practices as set forth [in the Complaint] and issuing a state-of-the-art notice program for the wide dissemination of factually accurate recall notice for the Products." Compl. at 49. Nuna argues Plaintiffs cannot seek injunctive relief as they have all stopped using the Car Seats and allege they were aware of the recall. Memo. Dismiss at 5 (citing Compl. ¶¶ 75, 86, 97). Thus, the request for injunctive relief would fail to redress Plaintiffs' alleged injuries, as "it could give them nothing of value." *Id.* And past exposure to illegal

conduct, argues Nuna, does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects. Reply at 1 (citing *Simic v. City of Chicago*, 851 F.3d 734, 735 (7th Cir. 20117); *Graham v. Am. Honda Motors Co.*, 806 F. Supp. 3d 758, 777 (N.D. Ill. 2025)). As to Plaintiffs' request to enjoin Nuna from "continuing the unlawful practices," Nuna claims that the Repair Kit created in conjunction with the NHTSA completely redresses the alleged defect. Memo. Dismiss at 5. In light of the recall and issuance of the Repair Kit, the injunctive relief sought by Plaintiffs does not address any future injury. *Id.*

Plaintiffs see it differently. From Plaintiffs' perspective, the "fact that Plaintiffs no longer personally use the defective Car Seats does not deprive them of standing to seek injunctive relief on behalf of the proposed class." Resp. at 4. This argument, however, is a non-starter. "Plaintiffs in a class action cannot rely on unnamed plaintiffs to satisfy Article III's standing requirement." *Rivera v. Am. Honda Motor. Co., Inc.*, 2025 WL 1309536, at *5 (N.D. Ill. May 5, 2025) (quoting *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 958–59 (N.D. Ill. 2016)). Therefore, the Court considers only the allegations as to the named Plaintiffs' standing, here, Medema, Granados, and Gilomen. *See Thompson v. Cont'l Tire the Americas, LLC*, 2026 WL 516874 (S.D. Ill. Feb. 25, 2026).

Plaintiffs also contend that the proposed class includes "numerous Illinois consumers who purchased Nuna's" Car Seats and "who continue to face inadequate recall notification and ongoing misrepresentations about the safety and quality of the products." Resp. at 5. Plaintiffs, as proposed class representatives, assert they have

standing "to seek injunctive relief designed to protect those class members and prevent future deception." *Id*. For the same reasons as above, this argument is unpersuasive. Plaintiffs cannot rely on unnamed class members to confer standing.

Plaintiffs maintain that their request for injunctive relief addresses ongoing and prospective harm, as there exists "continuing consumer confusion and misinformation that persist despite the recall" on the products and "[i]njunctive relief is necessary to ensure Nuna discloses safety-related defects promptly and truthfully in the future." Resp. at 5. This argument also fails to carry the day for Plaintiffs. To have standing to pursue injunctive relief, Plaintiffs must show that they "*personally face[] –going forward–* a 'real and immediate threat of future injury'" from Nuna's products. *Daly v. FitLife Brands, Inc.*, 2023 WL 6388112, at *4 (N.D. Ill. Sept. 29, 2023) (citing *Simic*, 851 F.3d at 738) (emphasis in original). "The equitable remedy of injunctive relief 'is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Id.* (quoting citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "When considering this requirement in the context of consumer fraud claims, the majority of courts in this district have concluded that a plaintiff's awareness of the alleged misrepresentations makes any future harm speculative, precluding that plaintiff from pursuing injunctive relief." *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 718 F. Supp. 3d 800, 810 (N.D. Ill. 2024) (collecting cases). Plaintiffs' speculative assertions of "continuing consumer confusion and misinformation" are not a real and immediate threat of future injury.

*See* Resp. at 5. And while it's true that "[i]n consumer fraud class actions, claims for injunctive relief have been found sufficient where there were "allegations that the plaintiffs intended to or were likely to purchase products again," no such allegations are contained in the Complaint. *Jamison v. Polygroup N. Am., Inc.*, 836 F. Supp. 3d 867, 876 (N.D. Ill. 2026) (citation modified).

Here, "[b]ecause Plaintiffs acknowledge they now know of [Nuna's] allegedly deceptive practices, they cannot claim that they face a risk of future deception." *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 2024 WL 726838, at *5. Therefore, Plaintiffs do not have standing to pursue injunctive relief. *See id.*; *Daly*, 2023 WL 6388112, at *4 ("When a consumer knows about the allegedly false advertising, then that particular consumer is no longer at risk of future harm."); *Garza v. Nestle USA, Inc.*, 2023 WL 6141371, at *3 (N.D. Ill. Sept. 20, 2023) ("She now knows the truth about [the product], so a judicial decision requiring accurate labeling would not benefit her."). As the Seventh Circuit has explained, "a plaintiff cannot establish standing by alleging merely a *possible* future injury—rather, the injury must be *certainly impending*." *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R. Inc.*, 13 F.4th 560, 568 (7th Cir. 2021) (citation modified) (emphasis in original).

*C. Monetary Relief*

Nuna next argues that Plaintiffs lack standing for monetary relief because "[n]one of the Plaintiffs here allege that they suffered any physical injury or property damage. They claim simply loss of the benefit of their bargain when purchasing the

car seats." Memo. Dismiss at 8. Since "[t]he Complaint admits that all three Plaintiffs learned of the Recall and Repair Kit option, and all three were directed to fill out the recall form on Nuna's website to obtain the Repair Kit,. . . Plaintiffs have had their products' value restored." Memo Dismiss at 8–9. To the extent Plaintiffs elected not to use the repair kit, Plaintiffs' economic injury, posits Nuna, "is no longer traceable to Nuna's wrongdoing but, rather, to their own choices as consumers." *Id*. at 9 (citing *Graham*, 806 F. Supp. 3d at 777). Additionally, Nuna asserts that Plaintiffs lack standing because they fail to allege "that *their* car seats failed to clamp properly, which was the asserted risk that led to the recall." *Id.* (emphasis added). Finally, Nuna contends that even if Plaintiffs were to allege that the harness straps on the Car Seat do not remain tight, Plaintiffs still suffered no economic injury in light of Nuna's offering of a Repair Kit and the offer to clean the seat and install the new cover at no cost. *Id*. at 9–10.

Plaintiffs counter that they have standing to pursue monetary relief, as they allege that they paid a premium for the Car Seats based on Nuna's representations of safety and quality, but the products they received were defective and worth less than what was promised. Resp. at 7. Not only did Plaintiffs pay a price premium at purchase, they "received items rendered unsafe and unusable even after the recall." *Id*. at 6. Paying a price premium, argues Plaintiffs, is a sufficiently concrete economic injury at the motion to dismiss stage. *Id.* The Court agrees with Plaintiffs. As Plaintiffs correctly point out, this is the classic benefit-of-the-bargain or price-premium theory of injury, recognized in this Circuit as sufficient at the pleading

stage. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing."); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 986–87 (N.D. Ill. 2013) (a financial injury is "established at the time of purchase, regardless of whether [the purchaser] later was dissatisfied with the [product] and regardless of whether [the purchaser] would have purchased a substitute product"). Here, Plaintiffs have alleged that they would not have purchased the Car Seats, or would have paid less, had they known of the alleged defect. "At the pleading stage, that is enough to establish standing to seek a monetary remedy." *Castillo v. Unilever United States, Inc.*, 2022 WL 704809, at *3 (N.D. Ill. Mar. 9, 2022).

*D. Mootness*

Next, Nuna argues that the claims should be dismissed based on the prudential mootness doctrine as the claims are moot. Memo. Dismiss at 10. According to Nuna, "[i]n cases where, as here, a manufacturer announces a recall program to remedy the defect central to a pending case and Plaintiffs choose to pursue their claims despite the recall, courts have examined the justiciability of Plaintiffs' claims under the doctrine of prudential mootness." Memo. Dismiss at 10–11 (quoting *Bolton v. Ford Motor Co.*, 2024 WL 3328522, at *11 (D. Del. July 8, 2024) (citation omitted). Nuna contends that it conducted a recall of the Car Seats to address the design issue underlying Plaintiffs' claims, and distributed a Remedy Kit that "ensures that recalled car seats will function as well as any consumer would have reasonably

expected at the time of purchase." Memo. Dismiss at 10. According to Nuna, without additional allegations that Plaintiffs' Car Seats manifested a latching problem, that Nuna failed to act, or that the Repair Kit did not fully remediate Plaintiffs' losses, their claims are moot. *Id.*

Plaintiffs counter that courts routinely decline to apply this doctrine where plaintiffs seek not only equitable relief, but legal relief that exceeds what defendants were offering through a recall." Resp. at 10 (quoting *Davis v. BMW of N. Am., LLC*, 2022 WL 3646571 at *3 (D. N.J. Aug. 23, 2022)). According to Plaintiffs, this doctrine "does not apply 'where plaintiffs seek to recover diminution in value damages' because such damages exceed what the recall provides." *Id.* Plaintiffs maintain that here, the doctrine is inapplicable as they seek damages for overpaying when they purchased defective car seats. *Id.* Nuna's recall offers only a forward-looking Remedy Kit that fails to provide relief for the price-premium Plaintiffs allege they paid.

Mootness is the doctrine of standing set in a time frame; meaning the requisite personal interest that must exist at the commencement of the litigation to confer standing must continue throughout its existence. *See Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 929 (7th Cir. 2013). Therefore, the "mootness doctrine requires re-evaluating the standing requirements throughout litigation," and "[i]f at any point the plaintiff would not have standing to bring suit at that time, the case [is] moot." *Id.* Here, Nuna invokes the prudential mootness doctrine, which is an equitable concept, "concerned, not with the court's

power under Article III to provide relief, but with the court's discretion in exercising that power." *Penthouse Int'l, Ltd. v. Meese,* 939 F.2d 1011, 1019 (D.D.C. 1991).

The Court finds *Rivera v. America Honda* Company, a case cited by both parties in support of their arguments, instructive. 2025 WL 13095336 (N.D. Ill. May 5, 2025). In *Rivera*, the plaintiff alleged injury in the form of overpayment at the time of purchase and maintained that the recall did not fully remediate that loss as her vehicle had diminished in value due to the defect. *Id.* at *3. The defendant argued that the plaintiff's request for monetary damages became moot when she was offered and accepted a recall that fully redressed any injury she suffered. *Id.* The court examined Seventh Circuit caselaw addressing whether a recall that fully repairs a defect moots claims. *Id.* at *4. The court found no such authority, and the parties' briefs similarly did not contain any. *Id.* The *Rivera* court found that, on the facts alleged, the plaintiff had standing as she alleged "injury in the form of overpayment at the time of purchase" and "maintain[ed] that the recall did not fully remediate that loss." *Id.* The facts alleged here are nearly identical, and the Court finds the reasoning in *Rivera* persuasive. Here, Plaintiffs allege they paid a price premium for the Car Seats at the time of purchase. Regardless of whether the Repair Kit fully fixed the alleged defect in the Car Seats, Plaintiffs' claims are not moot.

## II. Rule 12(b)(6)

Nuna also moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court addresses each argument in turn.

*A. Express Warranty (Count I)*

In Count I, Plaintiffs assert a claim for breach of the express warranty (the Limited Warranty). Compl. ¶¶ 148–161. Nuna, allege Plaintiffs, provided them and all Class Members with a Limited Warranty that if Nuna's product "shows a defect in materials and workmanship during the warranty period, the customer can request Nuna to review a warranty claim." Compl. ¶ 152. "If such a defect is discovered during the warranty period, [Nuna] will, at [its] discretion, repair or replace your product." *Id*. Nuna moves to dismiss this claim.

Under the UCC, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313(1)(a). "To state a claim for breach of an express warranty under Illinois law, the complaint must allege (1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty." *Lambert v. Dollar General Corp.*, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017); see also *Van Zeeland v. Rand McNally*, 532 F. Supp. 3d 557, 564–65 (N.D. Ill. 2021).

Nuna argues that the Court should dismiss Plaintiffs' express warranty claims because the sole basis for the claim is Nuna's Limited Warranty language promising to repair or replace units with defects in materials or workmanship. Memo. Dismiss

at 14. But Nuna asserts that under Illinois law, express warranties against defects in "materials and workmanship" are not construed to cover design defects. Memo. Dismiss at 14–15 (citing *Krafcky v. Frued American, Inc.*, 2022 WL 4132495 (N.D. Ill. Sept. 12, 2022); *Pickens v. Mercedes-Benz USA LLC*, 2021 WL 5050289 (N.D. Ill. Nov. 1, 2021); and *Voelker v. Porsche Cars North America., Inc.*, 353 F.34d 516 (7th Cir. 2023)). The Court agrees with Nuna.

"Under Illinois law, a 'manufacturing defect occurs when one unit in a product line is defective, whereas a design defect occurs when the specific unit conforms to the intended design but the intended design itself renders the product unreasonably dangerous.'" *Krafcky*, 2022 WL 4132495 at *4 (quoting *Donaldson v. Johnson & Johnson*, 37 F.4th 400, 407 (7th Cir. 2022)). As several district courts have noted, the Seventh Circuit, applying Illinois law, "has held that warranties for 'material and workmanship' do not cover design defects." *Pickens*, 2021 WL 5050289 at *2 (citing *Voelker*, 353 F.3d at 527) (dismissing breach of express warranty claim where plaintiff alleged that his car sunroof had serious design defects, but plaintiff's warranties covered only "defects in material or workmanship.").

Here, as Nuna correctly points out, the Complaint alleges that Nuna manufactures and sells defective car seats. Mot. Dismiss at 14 (citing Compl. ¶ 1). Plaintiffs allege that "[b]y design," the Car Seats front harness adjuster button is uncovered and prone to being covered with debris. Compl. ¶ 4. This defect, according to Plaintiffs, "causes the harness not to properly and securely tighten (or remain tight) or to loosen altogether, which in turn [cannot] properly restrain the occupant,

increasing the risk of injury in a crash." *Id.* In short, there is nothing in the Complaint to suggest that the front harness was manufactured in a manner that deviated from the intended design. Rather, the Complaint squarely takes aim at the design, and it even explicitly defines the design as "the Defect" at issue from the outset. *Id.* Accordingly, the "material and workmanship" warranty does not cover this defect.

Plaintiffs first counter that the Limited Warranty does not list "design defects" among the warranty's multiple exclusions. Resp. at 13. Moreover, argue Plaintiffs, they allege more than design defects. *Id.* They also allege a defect that involves the harness not properly and securely tightening or loosening, which could be the result of improper material selection. *Id.* From Plaintiffs' point of view, whether the defect is one of design solely or also involves material selection is a question of fact that should be determined after the benefit of discovery and is improper on a motion to dismiss. Resp. at 13–14.

Nuna first replies that while the Limited Warranty may not list "design defects" in its exclusions, it only expressly covers defects in "materials and workmanship," which on its face does not cover design defects. Reply at 7. The Court agrees. On its face, the warranty does not cover design defects, regardless of whether they are explicitly listed in the exclusions. Further, while Plaintiffs maintain that they have pled a claim based on "material" selection rather than the uncovered design of the clasp, the Complaint shows otherwise. Plaintiffs plead that the "*Defect* causes the harness not to properly and securely tighten (or remain tight) or to loosen," not

the materials, and, by Plaintiffs own definition, "the Defect" is the design. Compl. ¶ 4 (emphasis added).

Plaintiffs further contend that Nuna overlooks their allegations that the Limited Warranty is both substantively and procedurally unconscionable. Resp. at 13; Compl. ¶¶ 132, 157–58. As such, conclude Plaintiffs, any disclaimer or exclusion is void and the question of unconscionability should be considered after discovery. *Id.* at 14 (citing *In re Rust-Oleum Restore Mktg., Sales and Prods. Liab. Litig.,* 155 F. Supp. 3d 772, 789 (N.D. Ill. 2016) (where the court found that the plaintiffs could seek consequential damages on an express warranty claim despite an exclusive-remedy provision, because "whether an exclusive-remedy provision fails of its essential purpose is fact-driven and inappropriate for resolution at this stage.").

Nuna first replies that Plaintiffs still have not identified an actionable express warranty, and *Rust-Oleum* is inapplicable because it dealt with whether an explicit exclusion for consequential damages in a Limited Warranty barred the plaintiffs from seeking consequential damages. Reply at 7–8 (citing *In re Rust-Oleum Restore Mtktg, Sales Practices and Products Liab. Litig.*, 155 F. Supp. 3d at 794–95). The Court agrees. Plaintiffs are bringing an express warranty claim *pursuant to* the Limited Warranty. They are not bringing a claim *in spite of* a Limited Warranty. Even assuming (without finding) that the Limited Warranty is unconscionable, and therefore voidable, it is unclear how this changes the fact that the Limited Warranty does not make an express promise about design defects.

Lastly, Plaintiffs argue that their express warranty claims survive because they have also pled express warranty claims arising from Nuna's advertising campaign, which stated that the car seats provide "security," "peace of mind," and that they are "extensively tested." Resp. at 15–17. Nuna retorts that this was not pled as the basis for Plaintiffs' express warranty claim in the Complaint. Reply at 9. The Court agrees.

In Plaintiffs' claim for breach of express warranty, Plaintiffs begin by alleging that "Nuna provided Plaintiffs and Class Members with an express warranty (the 'Limited Warranty')." Compl. ¶ 150. They go on to allege that the Limited Warranty covers "materials or workmanship," that it covers the products at issue, and that it was the "basis of the bargain." *Id.* ¶¶ 152, 154. Nowhere are marketing materials mentioned in relation to the breach of express warranty claim. The representations in the marketing materials, on the other hand, are alleged in conjunction with other claims.

Further, Nuna is correct that Plaintiffs only plead in a conclusory fashion that they "read and relied on Defendant's advertising and marketing materials, including viewing representations that the Product was known for its security and safety." Reply at 9–10; *see also* Compl. ¶¶ 72, 83, 94. Plaintiffs do not allege these were the basis of the bargain, and they do not specify which claims specifically were the basis of the bargain. *Graham v. Am. Honda Motor Co.*, 806 F. Supp. 3d 758, 788 (N.D. Ill. 2025) (dismissing express warranty claim because plaintiff "fails to identify any particular statement he relied on in forming the bargain").

Accordingly, the Court finds Plaintiffs have failed to state a claim for breach of express warranty, as they only properly pled an express warranty which, as a matter of law, does not include design defects.

B. *Implied Warranty* (Count II)

In the second claim for relief, Plaintiffs allege that Nuna provided Plaintiffs and Class Members with implied warranties that the Car Seats were merchantable and fit for the ordinary purpose for which the Car Seat was used and sold and breached that warranty as the Car Seats were not fit for their ordinary purpose. Compl. ¶¶ 162–184.

Nuna moves to dismiss this claim as to Plaintiffs Medema and Gilomen because implied warranties give a buyer a cause of action only against the seller, and here, Plaintiffs are not in privity with Nuna, the manufacturer, and no privity exception applies. Memo. Dismiss at 15. Rather, asserts Nuna, Plaintiffs Medema and Gilomen's immediate sellers are the retailers from whom they purchased the Car Seats. *Id.* Specifically, Plaintiff Medema purchased her Car Seat online from Dillards.com and Plaintiff Gilomen purchased her Car Seat online from Nordstrom.com. Memo. Dismiss at 16.

Plaintiffs counter that they have adequately pled exceptions to the privity requirement. Resp. at 17–18. First, Plaintiffs point out that Plaintiffs Medema and Gilomen have alleged direct dealings with Nuna that warrants an exception to the privity requirement. *Id.* Plaintiffs allege that they relied upon Nuna's safe and secure marketing campaign when they purchased the Car Seats, which is sufficient to plead

the "direct dealings" exception. *Id. (*citing *Elward v. Electrolux Home Prods., Inc.* 214 F. Supp. 3d 701 (N.D. Ill. 2016); *In re Rust Oleum*, 155 F. Supp. 3d at 807; *Sheeley v. Wilson Sporting Goods Co.*, 2017 WL 5517352, at *3 (N.D. Ill. Nov. 17, 2017)). Second, Plaintiffs Medema and Gilomen have pled facts invoking the third-party beneficiary exception under Illinois law. Resp. at 18. According to Plaintiffs, Medema and Gilomen have pled that Nuna knew or should have known the use for which the Car Seats were purchased and that the Car Seats were not fit for their ordinary and intended purpose. *Id*. The way Plaintiffs see it, they satisfy this exception because retailers were not intended to be the ultimate consumers of the Car Seats and have no rights under the warranties provided by Nuna. Resp. at 18.

In reply, Nuna asserts that no exception applies. Reply at 6. Nuna contends that Plaintiffs fail to allege what they specifically reviewed prior to their respective purchases. *Id*. Instead, argues Nuna, Plaintiffs vaguely allege that they "read and relied" on Nuna's advertising materials, which Nuna argues is insufficient. *Id*. (citing Compl. ¶¶ 72, 83, 94). As for Plaintiffs' invocation of the third-party beneficiary exception, Nuna argues this also fails because the third party must be identified in the contract by name, or at least identified in the contract as a class intended to be benefited by the agreement. *Id*. Nuna maintains that Plaintiffs plead no facts plausibly suggesting that they were incidental beneficiaries. *Id.*

Pursuant to the UCC, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314. "Goods to be merchantable must be at least such as . . .

are fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2-314(2)(c)). Under Illinois law, "implied warranties arise as a matter of law." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020) (citation omitted). "As a general rule, absent an allegation of personal injury, implied warranties arise under Illinois law only between buyers and immediate sellers." *Redmond v. Whirlpool Corp.*, 2020 WL 9396529, at *5 (N. D. Ill. April 28, 2021). As with most rules, there are exceptions, and Plaintiffs invoke two: the direct-relationship exception and third-party exception. The Court address each in turn.

The direct relationship exception applies when there is a direct relationship between a buyer and manufacturer. Plaintiff Medema alleges that prior to her purchase she read and relied on Nuna's advertising and marketing materials, including viewing representations that the Car Seats were known for their security and safety. Compl. ¶ 72. Plaintiff Gilomen alleges the same. *Id.* ¶ 94.

The Court agrees with Nuna that Plaintiffs Medema and Gilomen fail to plausibly plead allegations invoking the direct relationship exception as they do not allege that they had any contact with Nuna or relied on any particular advertising statement. *See Redmon*, 2021 WL 2020 WL 9396529 at *6 (collecting cases). True, as Plaintiffs correctly point out, some courts have found the exception applicable in the context of advertising materials; but the Court finds more persuasive those courts' reasoning who find that such general allegations do not implicate the direct relationship exception. *See Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1056 (N.D. Ill. 2022) ("courts in this district have applied the direct dealing exception only

where the manufacturer has direct contact with the purchaser"). To be clear, Plaintiffs allege that Nuna's website advertises the product as "secure" and "extensively tested." Compl. ¶¶ 42–43. Plaintiffs also allege that they relied on "Defendant's advertising materials," but they purchased the products from various other retailers. They do not specify what representations they relied on, much less whether those representations were the ones specified on Nuna's website. *See In re VTech Data Breach Litig.*, 2018 WL 1863953, at *5 (N.D. Ill. Apr. 18, 2018) ("I am not persuaded that the Illinois Supreme Court would conclude that advertising alone creates a direct relationship between a manufacturer and a customer (and no such binding authority has been cited), especially where, as here, there is no allegation that a plaintiff viewed a particular representation in an ad and relied on the representation in making the purchase."). This is also not a case where the plaintiff relied on specific manufacturer representations on the label. *See In re Rust-Oleum*, 155 F. Supp. 3d 772.

Next up is the third-party exception. This exception to the privity requirement applies "where the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Elward*, 214 F. Supp. 3d at 705. Plaintiffs argue they have alleged that "Nuna knew or should have known of the use for which the Car Seats were purchased," which was for consumers who wanted safe and secure car seats. Resp. at 18. The Court finds Plaintiffs' allegations distinguishable from those in their cited authority. *See Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 703 (N.D.

Ill. 2016) (finding third-party beneficiary exception met where plaintiff pled "direct communications with her and other putative class members via advertisements, the internet, warranty forms, registration cards, and other documents"). Here, unlike *Elward*, Plaintiffs fail to plausibly allege such direct communications with Nuna, or that Nuna knew their identity and manufactured the Car Seats to meet these requirements. *See Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019) (declining to find third-party beneficiary exception to privity requirement because plaintiff "does not allege that defendant manufactured the product to her specifications but sold it to her through a middle man. . . . Nor does she allege she was a direct beneficiary of any contract between defendant and [Manufacturer]"). Accordingly, the Court finds that Plaintiffs have failed to allege an exception to the privity requirement for a breach of implied warranty claim.

*C. ICFA (Count VI)*

In Count VI, Plaintiffs assert a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1, *et seq.* (ICFA). Plaintiffs allege that Nuna's conduct constituted unfair or deceptive acts or practices.

"The ICFA provides a remedy for 'unfair or deceptive acts or practices' in certain commercial transactions." *Santiago v. Tesla, Inc.*, 757 F. Supp. 3d 831, 840 (N.D. Ill. 2024) (quoting 815 ILCS 505/2). To state a claim under the ICFA, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade

or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (citation modified). While a plaintiff may premise an ICFA claim on unfair or deceptive conduct or both, the pleading standards are different. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738–39 (7th Cir. 2019).

A deceptive practices claim under the ICFA is "analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)," which "requires a pleading to state with particularity the circumstances constituting fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014) (citation modified). That is, the allegations must include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quotation omitted).

On the other hand, "a cause of action for unfair practices under the [ICFA] need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply*, 536 F.3d at 670; *see also Kahn v. Walmart Inc.*, 107 F.4th 585, 601 (7th Cir. 2024) ("A deceptive practices claim under the ICFA must meet Rule 9(b)'s heightened pleading standard, but an unfair practices claim need not if it is not based on fraud.").

"The applicable pleading standard does not turn on a formalistic invocation of the word 'unfair.'" *Kahn*, 107 F.4th at 601. Instead, it depends on the nature of a plaintiff's allegations. *Id.* "If a claim sounds in fraud—in other words, is

premised upon a course of fraudulent conduct—then Rule 9(b) applies." *Id.* at 601–02 (citation modified).

*1. Unfair Conduct*

Nuna contends that Plaintiffs fail to state a deceptive practices claim that satisfies Rule 9(b)'s heightened pleading requirements. Memo. Dismiss at 19–20. Plaintiffs retort that their ICFA claim is premised both deceptive conduct *and* unfair practices. Resp. at 19–20 (citing Compl. ¶¶ 219–37). "To determine whether a practice is unfair within the meaning of the ICFA, courts look to three factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and/or] (3) whether it causes substantial injury to consumers." *Kahn*, 107 F.4th at 602. Plaintiffs point out that they allege that Nuna continued to sell and promote car seats as "safe" despite internal knowledge of a safety-critical harness defect and mounting consumer complaints, which caused substantial injury to consumers who overpaid for unsafe products. Resp. at 20–21. Those allegations, posit Plaintiffs, readily meet Illinois's three-factor unfairness test, and courts "routinely" address claims "involving defective consumer products marketed as safe." *Id.* (citing *Fares v. Char-Broil, LLC*, 2025 WL 1191729, at *6 (N.D. Ill. Apr. 24, 2025)).

Moreover, critically, Nuna fails to seek dismissal of Plaintiffs' ICFA claim under the unfair-conduct prong, and thus, argue Plaintiffs, Nuna has waived any challenge to Plaintiffs' claim under that theory. Resp. at 19–20 (citing *Barnes v. Unilever United States Inc.*, 2023 WL 2456385, at *3 (N.D. Ill. Mar. 11, 2023) (finding defendant waived challenge by raising unfair-practices argument for the first time in

reply); *Fares*, 2025 WL 1191729, at *6 (same)). Nuna's reply is silent on this point. *See* Reply. The Court agrees with Plaintiffs that, because Nuna failed to seek dismissal of their ICFA claim based on unfair practices, that claim survives.[5]

*2. Deceptive Conduct*

Turning to Plaintiffs' ICFA allegations based on deceptive conduct, as stated above, such a claim is governed by Rule 9(b). Nuna argues that Plaintiffs' claim fails for two primary reasons: (1) Plaintiffs fail to adequately allege that Nuna knew about the Car Seats' design defect at the time of concealing or omitting facts about said defect; and (2) Plaintiffs do not allege that they actually saw and were deceived by the alleged deceptive statements. Memo. Dismiss at 19–21. The Court addresses each argument in turn.

Starting with Nuna's knowledge of the defect, Nuna notes that, under the ICFA, where a plaintiff claims the defendant concealed or omitted material facts from buyers, she must also allege "that the fact omitted or concealed was known to the defendant at the time of the concealment." Memo. Dismiss at 19 (quoting *Addison v. Distinctive Homes, Ltd.*, 836 N.E.2d 88, 92 (Ill. App. Ct. 2005)). Here, argues Nuna, Plaintiffs merely allege in a conclusory fashion that "Nuna has had actual knowledge

[5]The Court acknowledges that this holding may seem in tension with its finding below, that Plaintiffs have failed to sufficiently plead that Nuna had pre-sale knowledge to sustain Plaintiffs' ICFA claim based on deceptive conduct, given that all ICFA claims (whether based on unfair or deceptive conduct), require that a plaintiff plead that the defendant intended the plaintiff rely on the deceptive or unfair practice. However, because Nuna argued only that Plaintiffs failed to adequately allege their pre-suit knowledge sufficiently to satisfy Rule 9(b)'s heightened pleadings standard, the Court declines to find, without any argument from Nuna on the point, that the Complaint's allegations about Nuna's pre-sale knowledge are insufficient under Rule 8(a)'s notice pleading standard.

since at least 2016, that the [Car Seats were] defectively designed and exposes infants to great risk of serious injury and death." *Id.* (quoting Compl. ¶ 104). From Nuna's perspective, that is not enough. The additional allegations supporting Nuna's knowledge of the defect, posit Nuna, do not save the claim.

That is, according to Nuna, Plaintiffs' allegations "upon information and belief" that Nuna knew about the defect when it redesigned the Car Seats in October 2023, or that Nuna knew at the absolute latest about the defect in December 2024 when it issued the Recall, are insufficient to show Nuna's knowledge in support of Plaintiffs' ICFA claim because both dates are well after they allege their car seats were made and sold (the latest being March 2022). *Id.* at 20 (citing Compl. ¶¶ 69, 80, 91, 106–07). And, argues Nuna, Plaintiffs' allegations that Nuna, should have known about the defects because of "rigorous testing" of the Car Seats has been found to be insufficient to satisfy the heightened pleading requirement required to support an ICFA claim. Memo. Dismiss at 20 (citing *Graham*, 806 F. Supp. 3d at 782). In *Graham*, the court rejected the plaintiffs' argument that "for a class of 'sophisticated' manufacturers, there is no such thing as an accident or an oversight in product liability cases [based on the reasoning] that because (a) these manufacturers conduct pre-market product safety tests and (b) safety tests reveal defects, it follows that (c) any defective products that went out the door did so with the manufacturer's knowledge of the defect." 806 F. Supp. 3d at 782. The court noted that "[i]t may well be reasonable for the [p]laintiffs to question how Honda missed the defects during

product testing, but the particularity requirement of Rule 9(b) is designed precisely to discourage a 'sue first, ask questions later' philosophy to fraud allegations." *Id.*

Plaintiffs do not respond to Nuna's argument that Plaintiffs' allegations of Nuna's knowledge based on the October 2023 redesign or December 2024 Recall cannot support their ICFA claim, and thus Plaintiffs have waived the argument. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). As for their allegations about Nuna's rigorous testing, Plaintiffs argue, without citing to any authority, that these allegations are sufficient to support their ICFA claim because Nuna "self-proclaims that it 'goes above and beyond' the required testing to 'ensure compliance with safety standards,'" meaning "Nuna either knew of the Defect or, at a minimum, should have known that the Defect existed and negatively impacted the safety of the Car Seats." Resp. at 22 (citing Compl. ¶ 43). Plaintiffs do not address Nuna's argument that their allegations are similar to those that *Graham* court found to be insufficient. The Court therefore again finds that Plaintiffs have waived the argument. *See White v. Richert*, 2019 WL 4062539, at *9 (N.D. Ill. Aug. 28, 2019) (citing *Pelfrense v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him.")). No matter, because, based on the authority before it, the Court finds that the allegations regarding Nuna's knowledge based on its testing of the Car seats are insufficient to support their ICFA deception claim. *Graham*, 806 F. Supp.

3d at 782; *see also* R. 45, *In re: Nuna Baby Essentials Rava Litigation*, 3:25-cv-01284 (N.D. Cal. Jan. 16, 2026) at 25–26.

For the first time in response, Plaintiffs allege that "over a hundred complaints have been lodged with [the National Highway Traffic Safety Administration (NHTSA)], regarding issues related to the Defect, dating back to December 31, 2020—well before Plaintiffs' car seats were manufactured." Resp. at 22. Plaintiffs ask the Court to take judicial notice of the complaints because they are a matter of public record and not subject to reasonable dispute. *Id.* at 22 n.2 (citing Fed. R. Evid. 201; *Olson v. Champaign County, Illinois*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015)). Again, without citing any authority in support, Plaintiffs contend that these complaints are sufficient to establish Nuna's knowledge of the defect. *Id.* at 22.

In reply, although Nuna points out that Plaintiffs do not allege anything about the consumer complaints in their Complaint, Nuna does not argue that the Court cannot take judicial notice of the consumer complaints, so the Court considers them. *See Olson*, 784 F.3d at 1097 n.1; *see also Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 489 (7th Cir. 2023) ("district court retains discretion to treat new claims presented for the first time in briefing as a constructive motion to amend"). Regardless, argues Nuna, those consumer complaints still are insufficient to allege Nuna's pre-sale knowledge, given that there are no allegations of an unusual number of consumer complaints. Reply at 13 (citing *Costa v. Whirlpool Corp.*, 2025 WL 885245, at *5 (D. Del. Mar. 21, 2025) ("Publicly-posted product reviews—in some cases viewed by thousands of other consumers—do not constitute a font of 'superior or exclusive'

knowledge. It goes without saying that information available to millions of people on the internet with a few strokes of the keyboard by its very nature cannot be 'exclusive or superior.'"); *Kerr v. Gen. Motors LLC*, 2025 WL 2051621, at *12 (D. Del. July 22, 2025), *vacated and remanded sub nom. on other grounds* 2026 WL 2413568 (3d Cir. Aug. 18, 2026) ("With respect to customer complaints: consumer complaints suffice to establish knowledge only where there were an unusual number of complaints, such that the manufacturer would be on notice of a specific problem.") (citation modified)); *see also In re: Nuna Baby Essentials Rava Litigation*, 3:25-cv-01284 (N.D. Cal. Jan. 16, 2026) at 25. Although Nuna relies only on out-of-District authority, as stated above, Plaintiffs cite to *no* authority in support of their proposition that the consumer complaints support Nuna's pre-sale knowledge. Accordingly, based on the arguments and authority before it, the Court finds that Plaintiffs have failed to sufficiently allege, for purposes of Rule 9(b) that Nuna had knowledge of the defect at the time of sale in order to support their ICFA claim based on deception. The Court therefore need not address Nuna's argument that Plaintiffs failed to adequately plead that they saw and were deceived by anything before they purchased their Car Seats.

Accordingly, the Court dismisses Plaintiffs' ICFA claim without prejudice to the extent it is based upon deceptive conduct, but allows it to proceed to the extent it is based on unfair conduct.

*D. Common Law Fraud (Count IV) and Negligent Misrepresentation (Count V)*

In Count IV, Plaintiffs assert a claim for common law fraud and in Count V, they allege a claim for negligent misrepresentation. Nuna moves to dismiss both

claims, arguing first that Plaintiffs fail to meet Rule 9(b)'s requirement for fraud and, second, that omissions or failures to disclose, which is what Plaintiffs allege, will not support a common law fraud claim. Memo. Dismiss at 21–22.

"To state a cause of action for common-law fraud, a plaintiff must plead: (1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287 (Ill. App. Ct. 2013). "The common law tort of fraud ordinarily requires a deliberately false statement of material fact." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 649 (7th Cir. 2019). "An omission or failure to disclose, on the other hand, will not support a common law fraud claim but may be actionable as constructive fraud or fraudulent concealment if the defendant was under a particular duty to speak, which may stem from a fiduciary duty or a similar relationship of trust and confidence." *Id.*

"Negligent misrepresentation has essentially the same elements [as common-law fraud], except that the defendant need not know that the statement is false; rather his own carelessness or negligence in ascertaining the truth of the statement will suffice." *Avon Hardware Co.*, 998 N.E.2d at 1288. "Further, to plead a negligent misrepresentation claim, a plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information." *Id.*

As an initial matter, the Court notes that Rule 9(b)'s heightened pleading standard applies to Plaintiffs' common law fraud claims, but not their negligent misrepresentation claims. *See Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 593–94 (Ill. 1989) (common law fraud claims must be pled with particularity); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) ("We therefore must examine the necessary elements of a negligent misrepresentation claim under Illinois law. This claim is *not* governed by the heightened pleading standard of Rule 9(b)."); *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1041–42 (N.D. Ill. 2007) (collecting cases finding that Rule 9(b) does not apply to negligent misrepresentation claims).

For the same reasons discussed above as to Plaintiffs' ICFA claim based on deception, the Court finds that the Complaint does not adequately allege that Nuna had pre-sale knowledge of the defect under Rule 9(b), meaning the second element—Nuna's knowledge that the statement was false—is not satisfied, so Plaintiffs' common law fraud claim fails. The Court need not address whether Plaintiffs sufficiently alleged an affirmative misrepresentation, as opposed to an omission or failure to disclose.

Turning to Plaintiffs' negligent misrepresentation claim, the parties dispute whether the Complaint alleges that Nuna owed a duty to Plaintiffs to communicate accurate information. The way Nuna sees it, Plaintiffs fail to allege that Nuna was "under a particular duty to speak." Memo. Dismiss at 22 (citing *Commodity Futures Trading Comm'n v. Donelson*, 115 F.4th 791, 800 (7th Cir. 2024)). Plaintiffs, on the

other hand, point out that they alleged that "Nuna had a duty to disclose . . . the true quality and nature of the Products, including that the Products have a uniform dangerous Defect," and that this duty arose from Nuna's own representations and omissions concerning product safety. Resp. at 23–24 (citing Compl. ¶¶ 115–16, 129, 211, 229–30). According to Plaintiffs, courts recognize such a duty where, as here, the defendant possesses superior knowledge of a latent defect and makes partial or misleading safety representations. *Id.* at 24 (citing *Fares*, 2025 WL 1191729, at *5 (finding manufacturer owed a duty to disclose safety risks in consumer product marketed as safe)).

Although the cases cited by Nuna regarding their "duty to disclose" accurate information pertain to common law fraud claims, as stated above, the elements of common law fraud and negligent misrepresentation are "essentially" the same but for the defendant's knowledge of the falsity of the statement. *See Avon Hardware Co.*, 998 N.E.2d at 1288. So, the Court finds these cases regarding "duty" applicable. Indeed, in *Nelson*, the Seventh Circuit stated that, "[o]ne foundation of the law of fraud and negligent misrepresentation is the difference between an affirmative misrepresentation and a failure to disclose," and went on to find that a failure to disclosure "may be actionable as constructive fraud or fraudulent concealment if the defendant was under a particular duty to speak, which may stem from a fiduciary duty or a similar relationship of trust and confidence." 928 F.3d at 649 (citing *Joyce v. Morgan Stanley & Co.*, 538 F.3d 797, 800 (7th Cir. 2008) (Illinois law); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996); Restatement (Second) of Torts

§ 551 (1977)). In *Connick*, cited by *Nelson*, the Illinois supreme court found that a common law fraudulent claim failed on the duty element where "the complaint merely alleged that plaintiffs had purchased a Samurai from an authorized Suzuki dealer, and that Suzuki manufactured and distributed the Samurai. Nowhere in the complaint did plaintiffs sufficiently allege that they were in a confidential or fiduciary relationship with Suzuki or that Suzuki was in a position of superiority over them." *Connick*, 675 N.E.2d at 593. On the other hand, *Fares*, cited by Plaintiffs, does not address common law fraud or negligent misrepresentation, but rather analyzes the plaintiff's claims under the ICFA, which does not have a duty element. Fares, 2025 WL 1191729, at *5. Based on the arguments and authority presented to the Court, the Court finds that Plaintiffs have not adequately alleged that Nuna owed Plaintiffs a duty as required to state a claim for negligent misrepresentation.

Accordingly, the Court dismisses without prejudice Plaintiffs' common law fraud and negligent misrepresentation claims.

*E. Unjust Enrichment (Count VII)*

In Count VII, Plaintiffs assert a claim for unjust enrichment. Compl. ¶¶ 239–251. Nuna argues that the Court should dismiss this claim because unjust enrichment is not available where a contract governs the parties' relationship and there is an adequate remedy at law. Memo. Dismiss at 22–23. Here, asserts Nuna, the Car Seat's Limited Warranty governs the relationship between the parties. *Id.* Plaintiffs retort that Illinois law permits pleading an unjust enrichment claim in the alternative, which is what Plaintiffs argue they have done here. Resp. at 24.

"To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022) (citation omitted). "Unjust enrichment is an equitable remedy." *Id*. Therefore, it is only available when "there is no adequate remedy at law." *Id*. Unjust enrichment is appropriate only where there is no adequate remedy at law, it "is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013).

Here, Plaintiffs allege the existence of an express contract between the parties. *See supra*; Count I (Breach of Express Warranty). It is true that at the pleading stage, a party may plead breach of contract and unjust enrichment claims in the alternative. *Gociman*, 41 F.4th at 886. However, a party "may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count." *Id*. Here, whether intentional or not, Plaintiffs have "adopt[ed] and incorporate[d] by reference" the allegations "contained in all preceding paragraphs" of the Complaint, "as though fully set forth" therein," including the allegations pertaining to the existence and breach of an express contract between the parties. Compl. ¶ 239. This pleading error prevents Plaintiffs' unjust enrichment claim from going forward. *Gociman*, 41 F.4th at 886. The Court therefore dismisses Plaintiffs' unjust enrichment claim without prejudice.

However, the Court notes that Nuna also questions the legitimacy of an express or implied warranty in the motion to dismiss. As a reminder, "unjust enrichment claims are only available where the parties do not have an express contract." *Bonchon U.S.A., Inc. v. Aaron Allen & Assocs., LLC*, 2024 WL 1363422, at *9 (N.D. Ill. Mar. 30, 2024). If Plaintiffs choose to amend the unjust enrichment claim, they "must specifically plead in the alternative that there is no express contract, and it cannot rely on any allegations pertaining to the Agreement for its unjust enrichment claim." *Id*; *see also Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023) (allowing unjust enrichment and contract claims where plaintiff "expressly states that the unjust enrichment claim 'is pled in the alternative to, *and to the extent it is determined a contract does not exist or otherwise apply*, the contract-based claim set forth in the First Cause of Action above.'").

*F. Punitive Damages*

In their Complaint, Plaintiffs seek, among other damages, punitive damages. Nuna argues that the Court should strike Plaintiffs request for punitive damages because "there are no allegations in the Complaint that rise to the level needed to establish punitive damages," which, under Illinois law, are appropriate in circumstances such as "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." Memo. Dismiss at 23 (citing *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186, 384 N.E.2d 353 (1978)). Plaintiffs disagree and insist that they have alleged "numerous instances of

Nuna's *serious* fraudulent behavior" such that a claim for punitive damages should be allowed to proceed. Resp. at 24 (emphasis in original). The Court agrees with Plaintiffs. Throughout the Complaint Plaintiffs allege fraudulent behavior by Nuna, including fraudulent concealment and nondisclosure, deceptive conduct, fraudulent and deceptive business practices, and other deliberate conduct. *See* Compl. ¶¶ 138, 208, 227, 236. "The allegations sound in fraud, and a fraud claim can give rise to punitive damages." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 710 (N.D. Ill. 2020). The Court denies Nuna's motion to dismiss the demand for punitive damages.

## Conclusion

For the reasons discussed above, the motion to dismiss, R. [20], is granted in part and denied in part. With respect to Nuna's Rule 12(b)(1) arguments, the Court (1) denies the motion as to the Magnuson-Moss Warranty Act claims, as the Court has subject matter jurisdiction; (2) grants the motion as to Plaintiffs' request for injunctive relief for lack of standing; (3) denies the motion as to claims for monetary damages, as Plaintiffs have standing; and (4) denies the motion to dismiss all claims under the prudential mootness doctrine. With respect to Nuna's Rule 12(b)(6) arguments, the Court (1) denies the motion as to the ICFA claim based on unfair conduct (Count VI); (2) denies the motion as to Plaintiffs' claim for punitive damages; (3) grants the motion as to the claim for breach of express warranty (Count I); (4) grants the motion as to the claim for breach of implied warranty (Count II); (5) grants the motion as to the claim for fraud (Count IV); (6) grants the motion as to the claim for negligent misrepresentation (Count V); (7) grants the motion as to the ICFA claim based on deceptive conduct (Count VI); and (8) grants the motion as to the claim for unjust enrichment (Count VII). The dismissal is without prejudice. Plaintiffs may file an amended complaint consistent with this opinion by October 21, 2026.

DATED: September 30, 2026

United States District Judge
Franklin U. Valderrama